UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CHRISTOPHER WATTS,

        Petitioner,

v.                           Case No. 3:20-cv-1329-BJD-MCR

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

        Respondents.

_____

## ORDER

### I. Status

Petitioner Christopher Watts, an inmate of the Florida penal system,
initiated this action on November 19, 2020, by filing a Petition Under 28 U.S.C.
§ 2254 for Writ of Habeas Corpus by a Person in State Custody (Petition; Doc.
1).[1] In the Petition, Watts challenges a 2015 state court (Duval County,
Florida) judgment of conviction for armed robbery, armed burglary, and sexual
battery.[2] He raises fourteen grounds for relief in the Petition. Respondents
submitted an Answer to Petition for Writ of Habeas Corpus (Response; Doc.

---

[1] See Houston v. Lack, 487 U.S. 266, 276 (1988) (mailbox rule).
[2] For purposes of reference to pleadings, the Court will cite the document and
document page numbers assigned by the Court's electronic docketing system.

11). They also submitted an Appendix with Exhibits A-L.[3] See Doc. 12-1 through 12-3. Watts filed a brief in reply (Reply; Doc. 19).

## II. Relevant Procedural History

On May 6, 2014, the State of Florida charged Petitioner by information in Case No. 2014-CF-3639 with armed robbery, armed burglary, and sexual battery. Ex. B1 at 14. After a jury trial in November 2014, he was convicted as charged and sentenced to life in prison on each count to run concurrently. Ex. B1 at 106-14. As to each count, the court found Petitioner a habitual felony offender, imposed a minimum-mandatory term for each count to run consecutively, and designated Petitioner a sexual predator. Id. at 111-13, 118.

Petitioner appealed, raising three issues: (1) the trial court erred in allowing a racially discriminatory peremptory challenge to the sole remaining African-American juror over defense objection; (2) Watts' act of forcing a person to penetrate her vagina with her own finger did not constitute sexual battery as a matter of law, resulting in fundamental error; and (3) consecutive 10-year sentences are not required by section 775.087(2), Florida Statutes, for crimes committed in a single episode and involving a single victim. Ex. B 5. Additional

---

[3] The Court will refer to the exhibits in the Appendix (Doc. 12) as "Ex." Where provided, the page numbers referenced are the Bates stamp numbers at the bottom of each page of the Exhibit unless otherwise indicated.

briefing followed. Ex. B6, B7, B10. On September 18, 2015, the First District Court of Appeal (First DCA) per curiam affirmed Petitioner's conviction and sentence. Ex. B8. The mandate issued on October 6, 2015. Ex. B9.

Petitioner filed a pro se state Petition for Writ of Habeas Corpus with the First DCA on April 13, 2016.[4] Ex. C1.  He argued that his appellate counsel was deficient for failure to file a Rule 3.800(b)(2) motion to properly preserve a sentencing error. Id. at 3. The state responded. Ex. C2. In a written opinion, the First DCA denied habeas relief on January 23, 2017. Ex. C3. Petitioner sought rehearing, Ex. C4, and the First DCA denied rehearing. Ex. C5. Petitioner sought discretionary review, Ex. C6, D1, D3, and the Florida Supreme Court declined to accept jurisdiction and denied the petition for review. Ex. D4.

Petitioner filed a pro se motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850 on June 19, 2017. Ex. F1 at 1-52. The circuit court entered an order directing Petitioner to amend grounds 1, 2, 4, and 9. Id. at 59-62. Petitioner filed an Amended Motion for Post Conviction Relief on June 21, 2018, amending grounds 1, 2, 4, and 9. Id. at 63-86. In an

---

[4] In reciting the procedural history, the Court identifies the date of Petitioner's filings giving him the benefit of the mailbox rule.

order entered December 6, 2018, the circuit court denied Petitioner's motion for postconviction relief. Id. at 94-365. The court set forth the applicable law regarding postconviction claims of ineffective assistance of counsel, citing Strickland v. Washington, 466 U.S. 668 (1984). Ex. F1 at 94-95. The court attached portions of the record to its order. See Attachments: Exhibits A-C. Petitioner sought rehearing, the court denied rehearing, and Petitioner appealed. Ex. F1 at 372-91.

On June 20, 2019, the First DCA dismissed the untimely appeal. Ex. F4. Petitioner moved for rehearing, Ex. F5, and rehearing was denied. Ex. F6. The mandate issued on September 13, 2019. Ex. F7.

Petitioner filed a pro se motion to correct. Ex. G1. The circuit court denied the motion. Id. Petitioner sought rehearing and rehearing was denied. Id. Petitioner appealed, id., and the First DCA affirmed. Ex. G2. Petitioner moved for rehearing, Ex. G3, and the First DCA denied rehearing. Ex. G4. The mandate issued October 1, 2020. Ex. G5.

Petitioner filed a state Petition Seeking Belated Appeal on September 6, 2019 related to the postconviction court's December 2018 ruling denying postconviction relief. Ex. J1. The First DCA granted the petition on February 10, 2020. Ex. J2. Petitioner filed an appeal brief, briefing grounds 1, 2, 3, 6, 7,

4

8, and 9 of his postconviction motion. Ex. H2. The state filed a notice of filing no answer brief. Ex. H3. On October 14, 2020, the First DCA affirmed. Ex. H4. The mandate issued on November 12, 2020. Ex. H5.

### III. One-Year Limitations Period

Respondents calculate the Petition was timely filed. Response at 6-8. This action was timely filed within the one-year limitations period. See 28 U.S.C. § 2244(d).

### IV. Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. See Chavez v. Sec'y, Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007); Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318-19 (11th Cir. 2016). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Schriro, 550 U.S. at 474. The pertinent facts of this case are fully developed in the record before the

Court. Because the Court can "adequately assess [Petitioner's] claim[s] without further factual development," <u>Turner v. Crosby</u>, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

## V. Governing Legal Principles

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal petition for habeas corpus. <u>See</u> <u>Ledford v. Warden, Ga. Diagnostic & Classification Prison</u>, 818 F.3d 600, 642 (11th Cir. 2016). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" <u>Id.</u> (quoting <u>Greene v. Fisher</u>, 565 U.S. 34, 38 (2011) (quotation marks omitted)). As such, federal habeas review of final state court decisions is "'greatly circumscribed' and 'highly deferential.'" <u>Id.</u> (quoting <u>Hill v. Humphrey</u>, 662 F.3d 1335, 1343 (11th Cir. 2011) (quotation marks omitted)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the claim on the merits. <u>See</u> <u>Marshall v. Sec'y, Fla. Dep't of Corr.</u>, 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue a written opinion explaining its rationale in order for the state court's

decision to qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation, the United States Supreme Court has instructed:

> [T]he federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018). The presumption may be rebutted by showing that the higher state court's adjudication most likely relied on different grounds than the lower state court's reasoned decision, such as persuasive alternative grounds that were briefed or argued to the higher court or obvious in the record it reviewed. Id. at 1192, 1196.

If the claim was "adjudicated on the merits" in state court, § 2254(d) bars relitigation of the claim unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Richter, 562 U.S. at 97-98.

7

The Eleventh Circuit describes the limited scope of federal review pursuant to

§ 2254 as follows:

> First, § 2254(d)(1) provides for federal review for claims of state courts' erroneous legal conclusions. As explained by the Supreme Court in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000), § 2254(d)(1) consists of two distinct clauses: a "contrary to" clause and an "unreasonable application" clause. The "contrary to" clause allows for relief only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Id. at 413, 120 S. Ct. at 1523 (plurality opinion). The "unreasonable application" clause allows for relief only "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id.

> Second, § 2254(d)(2) provides for federal review for claims of state courts' erroneous factual determinations. Section 2254(d)(2) allows federal courts to grant relief only if the state court's denial of the petitioner's claim "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has not yet defined § 2254(d)(2)'s "precise relationship" to § 2254(e)(1), which imposes a burden on the petitioner to rebut the state court's factual findings "by clear and convincing evidence." See Burt v. Titlow, 571 U.S. ---, ---, 134 S. Ct. 10, 15, 187 L.Ed.2d 348 (2013); accord Brumfield v. Cain, 576 U.S. ---, ---, 135 S. Ct. 2269, 2282, 192 L.Ed.2d 356 (2015). Whatever that "precise

> relationship" may be, "'a state-court factual
> determination is not unreasonable merely because the
> federal habeas court would have reached a different
> conclusion in the first instance.'" <u>Titlow</u>, 571 U.S. at --
> -, 134 S. Ct. at 15 (quoting <u>Wood v. Allen</u>, 558 U.S. 290,
> 301, 130 S. Ct. 841, 849, 175 L.Ed.2d 738 (2010)).

<u>Tharpe v. Warden</u>, 834 F.3d 1323, 1337 (11th Cir. 2016). Also, deferential

review under § 2254(d) generally is limited to the record that was before the

state court that adjudicated the claim on the merits. <u>See</u> <u>Cullen v. Pinholster</u>,

563 U.S. 170, 182 (2011) (stating the language in § 2254(d)(1) "requires an

examination of the state-court decision at the time it was made").

Thus, "AEDPA erects a formidable barrier to federal habeas relief for

prisoners whose claims have been adjudicated in state court." <u>Burt v. Titlow</u>,

134 S. Ct. 10, 16 (2013). "Federal courts may grant habeas relief only when a

state court blundered in a manner so 'well understood and comprehended in

existing law' and 'was so lacking in justification' that 'there is no possibility

fairminded jurists could disagree.'" <u>Tharpe</u>, 834 F.3d at 1338 (quoting <u>Richter</u>,

562 U.S. at 102-03). This standard is "meant to be" a "difficult" one to meet.

<u>Richter</u>, 562 U.S. at 102. Thus, to the extent that the petitioner's claims were

adjudicated on the merits in the state courts, they must be evaluated under 28

U.S.C. § 2254(d).

9

## B. Exhaustion/Procedural Default

There are prerequisites to federal habeas review. Before bringing a §
2254 habeas action in federal court, a petitioner must exhaust all state court
remedies that are available for challenging his state conviction. See 28 U.S.C.
§ 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly
present[]" every issue raised in his federal petition to the state's highest court,
either on direct appeal or on collateral review. Castille v. Peoples, 489 U.S. 346,
351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state
prisoners must give the state courts one full opportunity to resolve any
constitutional issues by invoking one complete round of the State's established
appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a
> state prisoner must exhaust available state remedies,
> 28 U.S.C. § 2254(b)(1), thereby giving the State the
> ""opportunity to pass upon and correct" alleged
> violations of its prisoners' federal rights." Duncan v.
> Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L.Ed.2d
> 865 (1995) (per curiam) (quoting Picard v. Connor, 404
> U.S. 270, 275, 92 S. Ct. 509, 30 L.Ed.2d 438 (1971)). To
> provide the State with the necessary "opportunity,"
> the prisoner must "fairly present" his claim in each
> appropriate state court (including a state supreme
> court with powers of discretionary review), thereby
> alerting that court to the federal nature of the claim.
> Duncan, supra, at 365-366, 115 S. Ct. 887; O'Sullivan

10

> v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144
> L.Ed.2d 1 (1999).

Baldwin v. Reese, 541 U.S. 27, 29 (2004).

A state prisoner's failure to properly exhaust available state remedies results in a procedural default which raises a potential bar to federal habeas review. The United States Supreme Court has explained the doctrine of procedural default as follows:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. See, e.g., Coleman,[5] supra, at 747–748, 111 S. Ct. 2546; Sykes,[6] supra, at 84–85, 97 S. Ct. 2497. A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. See, e.g., Walker v. Martin, 562 U.S. --, --, 131 S. Ct. 1120, 1127–1128, 179 L.Ed.2d 62 (2011); Beard v. Kindler, 558 U.S. --, --, 130 S. Ct. 612, 617–618, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted

---

[5] Coleman v. Thompson, 501 U.S. 722 (1991).
[6] Wainwright v. Sykes, 433 U.S. 72 (1977).

> claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. See Coleman, 501 U.S., at 750, 111 S. Ct. 2546.

Martinez v. Ryan, 132 S. Ct. 1309, 1316 (2012). Thus, procedural defaults may be excused under certain circumstances. Notwithstanding that a claim has been procedurally defaulted, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice. Ward v. Hall, 592 F.3d 1144, 1157 (11th Cir. 2010). In order for a petitioner to establish cause,

> the procedural default "must result from some objective factor external to the defense that prevented [him] from raising the claim and which cannot be fairly attributable to his own conduct." McCoy v. Newsome, 953 F.2d 1252, 1258 (11th Cir. 1992) (quoting Carrier, 477 U.S. at 488, 106 S. Ct. 2639).[7] Under the prejudice prong, [a petitioner] must show that "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." Id. at 1261 (quoting Carrier, 477 U.S. at 494, 106 S. Ct. 2639).

Wright v. Hopper, 169 F.3d 695, 706 (11th Cir. 1999).

In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if the

---

[7] Murray v. Carrier, 477 U.S. 478 (1986).

12

petitioner can establish that a fundamental miscarriage of justice, the continued incarceration of one who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice, there remains yet another avenue for him to receive consideration on the merits of his procedurally defaulted claim. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." Carrier, 477 U.S. at 496, 106 S. Ct. at 2649. "This exception is exceedingly narrow in scope," however, and requires proof of actual innocence, not just legal innocence. Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001).

Ward, 592 F.3d at 1157. "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." Calderon v. Thompson, 523 U.S. 538, 559 (1998) (quoting Schlup, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. Schlup, 513 U.S. at 324.

## C. Ineffective Assistance of Trial Counsel

"The Sixth Amendment guarantees criminal defendants the effective assistance of counsel. That right is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003), and Strickland, 466 U.S. at 687).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [Strickland,] 466 U.S. at 688, 104 S. Ct. 2052. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. Id., at 689, 104 S. Ct. 2052. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id., at 687, 104 S. Ct. 2052.

> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., at 694, 104 S. Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." Id., at 693, 104 S. Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a

14

                trial whose result is reliable." <u>Id.</u>, at 687, 104 S. Ct. 2052.

<u>Richter</u>, 562 U.S. at 104. The Eleventh Circuit has recognized "the absence of any iron-clad rule requiring a court to tackle one prong of the <u>Strickland</u> test before the other." <u>Ward</u>, 592 F.3d at 1163. Since both prongs of the two-part <u>Strickland</u> test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." <u>Id.</u> (citing <u>Holladay v. Haley</u>, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in <u>Strickland</u>: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." <u>Strickland</u>, 466 U.S. at 697.

      A state court's adjudication of an ineffectiveness claim is accorded great deference.

> "[T]he standard for judging counsel's representation is a most deferential one." <u>Richter</u>, 562 U.S. at ---, 131 S. Ct. at 788. But "[e]stablishing that a state court's application of <u>Strickland</u> was unreasonable under § 2254(d) is all the more difficult. The standards created by <u>Strickland</u> and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." <u>Id.</u> (citations and quotation marks omitted). "The question is not whether a federal court believes the state court's determination under the <u>Strickland</u> standard was incorrect but whether that

> determination was unreasonable — a substantially
> higher threshold." <u>Knowles v. Mirzayance</u>, 556 U.S.
> 111, 123, 129 S. Ct. 1411, 1420, 173 L.Ed.2d 251 (2009)
> (quotation marks omitted). If there is "any reasonable
> argument that counsel satisfied <u>Strickland</u>'s
> deferential standard," then a federal court may not
> disturb a state-court decision denying the claim.
> <u>Richter</u>, 562 U.S. at ---, 131 S. Ct. at 788.

<u>Hittson v. GDCP Warden</u>, 759 F.3d 1210, 1248 (11th Cir. 2014); <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123 (2009). In other words, "[i]n addition to the deference to counsel's performance mandated by <u>Strickland</u>, the AEDPA adds another layer of deference — this one to a state court's decision — when we are considering whether to grant federal habeas relief from a state court's decision." <u>Rutherford v. Crosby</u>, 385 F.3d 1300, 1309 (11th Cir. 2004). As such, "[s]urmounting <u>Strickland</u>'s high bar is never an easy task." <u>Padilla v. Kentucky</u>, 559 U.S. 356, 371 (2010).

Petitioner also raises claims of ineffective assistance of appellate counsel. A claim of ineffective assistance of appellate counsel is governed by this same <u>Strickland</u> standard. <u>Philmore v. McNeil</u>, 575 F.3d 1251, 1264 (11th Cir. 2009) (per curiam), <u>cert. denied</u>, 559 U.S. 1010 (2010). As in a claim of ineffective assistance of trial counsel, failure to establish either prong of the <u>Strickland</u> standard is fatal to a claim of ineffective assistance of appellate

16

counsel. <u>Tuomi v. Sec'y, Fla. Dep't of Corr.</u>, 980 F.3d 787, 795 (11th Cir. 2020), <u>cert. denied</u>, 141 S. Ct. 1721 (2021).

In applying the two-pronged standard established in <u>Strickland</u>, the Court is mindful that appellate counsel may weed out weaker, although meritorious arguments, as there is no duty under the Sixth Amendment to raise every non-frivolous issue. <u>Overstreet v. Warden</u>, 811 F.3d 1283, 1287 (11th Cir. 2016). Regarding the prejudice prong, "[a]ppellate [c]ounsel's performance will be deemed prejudicial if we find that the neglected claim would have a reasonable probability of success on appeal." <u>Tuomi</u>, 980 F.3d at 795 (quoting <u>Philmore</u>, 575 F.3d at 1265) (internal quotation omitted). "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." <u>Overstreet</u>, 811 F.3d at 1287 (quoting <u>Smith v. Robbins</u>, 528 U.S. 259, 288 (2000) quoting <u>Gray v. Greer</u>, 800 F.2d 644, 646 (7th Cir. 1986)).

## VI. Findings of Fact and Conclusions of Law

### A. Ground One

As Ground One, Petitioner claims the trial court erred in allowing a racially discriminatory peremptory challenge to the sole remaining African American juror over defense objection. Petition at 5. He raised a comparable

claim on direct appeal. Ex. B5. The First DCA per curiam affirmed. Ex. B8. Respondents contend the constitutional claim is unexhausted and procedurally defaulted. Response at 10-12. Upon review, Petitioner raised more than a claim of trial court error on direct appeal. He relied on the United States Constitution and the holding in <u>Batson v. Kentucky</u>, 476 U.S. 79 (1986).[8] Ex. B5 at ii, 13; Ex. B7 at 1-3. He argued the remedy "for this violation of the Equal Protection Clause in the Fourteenth Amendment to the U.S. Constitution and the right to trial by an impartial jury" is reversal of his convictions. Ex. B7 at 2-3.

The Court finds Petitioner properly exhausted the <u>Batson</u> claim raised in Ground One. He cited to a violation of federal law, referred to relevant case law, and referenced a constitutional provision to alert the state court that he was raising a federal constitutional claim. As such, this Court concludes that the claim was exhausted and fairly presented to the First DCA.

Therefore, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. Under § 2254(d)(1), the question is whether the state court unreasonably applied <u>Batson</u> and its progeny to the facts of the case. After a review of the

---

[8] Petitioner also cited <u>Melbourne v. State</u>, 679 So. 2d 759, 763 (Fla. 1996), which references <u>Batson</u> jurisprudence. Ex. B5 at 8; Ex. B7 at 1-2.

record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Petitioner is not entitled to relief on the basis of this claim.

Under the Equal Protection Clause, a defendant has a constitutional right to be tried by a jury whose members were selected pursuant to nondiscriminatory criteria. Batson, 476 U.S. at 85-86. Of import, "[t]he Equal Protection Clause forbids a prosecutor from striking potential jurors solely on account of their race." United States v. Walker, 490 F.3d 1282, 1290 (11th Cir. 2007) (citing Batson, 476 U.S. at 86). Indeed, "[t]he Constitution forbids striking even a single juror for a discriminatory purpose." Flowers v. Mississippi, 139 S. Ct. 2228, 2244 (2019).

To evaluate an Equal Protection Clause claim concerning the use of peremptory challenges, there is a three-part process set forth in Batson:

> [O]n April 30, 1986, the Court decided Batson v. Kentucky and established its three-part process for evaluating claims that a prosecutor used peremptory challenges in violation of the Equal Protection Clause. First, a defendant must make a prima facie showing that a peremptory challenge has been exercised on the

> basis of race. 476 U.S., at 96-97, 106 S. Ct. 1712. Second, if that showing has been made, the prosecution must offer a race-neutral basis for striking the juror in question. Id., at 97-98, 106 S. Ct. 1712. Third, in light of the parties' submissions, the trial court must determine whether the defendant has shown purposeful discrimination. Id., at 98, 106 S. Ct. 1712.

Miller-El v. Cockrell, 537 U.S. 322, 328–29 (2003).

Petitioner's counsel invoked a Batson challenge at trial. The record shows Rashad Nandon, a potential juror and single, young, black male, said he rented his home. Ex. B2 at 38, 126. Ms. Rado asked the reason for the State's using a peremptory strike on Mr. Nandon. Id. at 126. The prosecutor responded there were three reasons: Mr. Nandon is single, he rents, and he switched his judgment concerning the selection of a particular card from a deck of cards. Id. at 126-27. The prosecutor also differentiated between single and divorced veniremen. Id. at 127. The court ruled:

> THE COURT: Well, I think looking at the entirety of the State's reasons, they could apply to any juror. They're not race-related at all. So I think they are facially race neutral, that that could have been the same explanation for any younger person who is single. I've never taken single to be the same as divorced. I thought single meant never married, but maybe not. So I'll find that the explanation of the State is not pretextural [sic] and is clear, reasonably specific, racially neutral, reasonable and genuine.

20

Id.

The defense's only stated objection concerned the peremptory strike of Mr. Nandon. The trial court acknowledged the preservation of the issue for appeal. Id. at 132.

At the conclusion of jury selection, when the court asked whether there were any exceptions or objections, excluding the one concerning Mr. Nandon, Ms. Rado mentioned Mr. McNair, a black male, and Mr. Waldon, a black male, noting they were both struck by the State's peremptory strikes. Id. at 140-41. However, Ms. Rado explained that other than her previously stated objection concerning Mr. Nandon, she had no additional objection. Id. at 141. The prosecutor pointed out that two of the selected jurors are African American females and the defense also struck one African American male. Id. The prosecutor explained that concerning the two stricken African American males, Mr. McNair and Mr. Waldon, one said he had a law enforcement issue and one said he had spent time in prison and was a convicted armed robber. Id. Ms. Rado explained that she had struck Mr. Bullard, an African American male, because he had a school conflict. Id. When the court asked if there was further argument, Ms. Rado responded this was not additional argument; it was simply something she needed to put on the record. Id. at 141-42.

Upon examination of the record, it shows that Mr. Nandon was born in 1985, had lived in Jacksonville for ten years, was employed and single, and rented his home. Id. at 38. During the course of the voir dire, Ms. Rado, in an attempt to explain reasonable doubt, presented a hypothetical concerning a shuffled deck of 52 cards and whether it is reasonable that she would pull the ace of spades. Id. at 108-109. Upon inquiry, Mr. Nandon responded it was possible, not reasonable. Id. He then, after questions concerning the existence of the ace of spades, said it was reasonable to think that Ms. Rado could pull that card. Id. at 110. Another prospective juror responded it was reasonable and then Ms. Rado apparently received an affirmative response from a group of prospective jurors. Id. Upon inquiry as to whether anyone disagreed, only two potential jurors spoke up and said they did not agree with that assessment. Id. at 110-11. Neither of those two served on the jury. As there was not disparate questioning, this line of questioning was not probative of discriminatory intent. Miller-El, 537 U.S. at 331-32.

Under these circumstances, Petitioner has not established an equal protection violation as he has failed to demonstrate or show systematic exclusion of black venire persons or the use of discriminatory criteria to select jurors. "In evaluating whether the rationale for a strike is mere pretext, the

22

key question is the '*genuineness* of the [government's] explanation, rather than its reasonableness.'" <u>United States v. Gibson</u>, 633 F. App'x 713, 717 (11th Cir. 2015) (quoting <u>Walker</u>, 490 F.3d at 1294). The State's asserted reasons for striking Mr. Nandon, that he was single, rented, and was quick to switch "his judgment from being a possibility to there being a reasonableness to the pulling of the card of one in 52[,]" were considered to be race neutral as the trial court found the explanation for the strike credible and non-pretextual. Ex. B2 at 126-27. The trial court's assessment is important as the trial judge is in the best position to consider the demeanor of the attorney who exercised the challenge. <u>Flowers</u>, 139 S. Ct. at 2243-44 (noting the determinations of credibility and demeanor lie peculiarly within the trial court's province). The First DCA affirmed the trial court's decision.

The record also shows there were two African American females that were selected to serve on the jury. Although this does not dispose of an allegation of race-based peremptory challenges, it is a significant factor tending to prove the plausibility of the government's reasons for the actual strike were credible and non-pretextual. <u>Gibson</u>, 633 F. App'x at 718. Of note, there was no defense objection concerning intentional discrimination based on gender.

23

The record in this case does not compel a finding that the State's use of a peremptory strike against Mr. Nandon constituted intentional discrimination. As such, there was no violation of Petitioner's rights under the Equal Protection Clause and the clearly established law as determined by the Supreme Court in <u>Batson</u>. Here, AEDPA deference is due to the state court's determination. Petitioner is not entitled to habeas relief on Ground One.

### B. Ground Two

As Ground Two, Petitioner alleges the act of forcing a person to penetrate herself with her finger did not constitute sexual battery as a matter of law, resulting in fundamental error through conviction. Petition at 7. Petitioner concedes this issue. Reply at 3. As such, the Court will not address this ground based on Petitioner's concession.

### C. Ground Three

As Ground Three, Petitioner alleges the trial court erred in applying consecutive 10-year sentences, though not required for crimes committed in a single episode involving one victim and no discharge. Petition at 8. Petitioner also concedes this issue. Reply at 3. As such, the Court will not address this ground due to Petitioner's concession.

24

### D. Ground Four

As Ground Four, Petitioner raises a claim of ineffective assistance of appellate counsel for failure to preserve a sentencing issue by filing a Rule 3.800(b)(2) motion. Petition at 10. Respondents contend that Petitioner did not properly exhaust the claim in Ground Four because he failed to fairly present any federal constitutional argument in support of his claim in the First DCA. Response at 15.

In his state petition for writ of habeas corpus, Petitioner raised a claim of ineffective assistance of appellate counsel, claiming the failure of appellate counsel to preserve a sentencing issue by filing a Rule 3.800(b)(2) motion constituted "a serious error and a substantial deficiency that fell outside the range of professionally acceptable performance." Ex. C1 at 6. The First DCA denied the petition finding appellate counsel was not ineffective.  Ex. C3. As such, this Court concludes that the claim of ineffective assistance of appellate counsel, a Sixth Amendment claim, was exhausted and fairly presented to the First DCA.

Therefore, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the

state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Petitioner is not entitled to relief on the basis of this claim.

Petitioner's ineffectiveness claim is without merit because he has shown neither deficient performance nor resulting prejudice. Accordingly, he is not entitled to federal habeas relief on the claim in Ground Four. As noted by Respondents, Petitioner did not establish prejudice as evinced by the record which demonstrates that even if counsel had filed a Rule 3.800 motion and then pursued the matter on appeal, the motion would have been denied and no appellate relief would have been granted because the precedent at the time of Petitioner's appeal had not yet changed. Response at 55-56.

Petitioner's convictions and sentences were final before the law in the state district changed. Therefore, appellate counsel was not ineffective as counsel cannot be held ineffective for failure to anticipate changes in the law. Winston v. United States, No. 8:12-cv-719-T-27MAP, 2013 WL 6198858, at *3 (M.D. Fla. Nov. 27, 2013) (not reported in F.Supp.2d) (citing United States v. Ardley, 273 F.3d 991, 993 (11th Cir. 2001); Spaziano v. Singletary, 36 F.3d

1028, 1039 (11th Cir. 1994); <u>Thompson v. Wainwright</u>, 787 F.2d 1447, 1459 n.8 (11th Cir. 1986)). As such, Petitioner is not entitled to habeas relief on Ground Four.

## E. Ground Five

As Ground Five, Petitioner alleges trial counsel rendered ineffective assistance by failing to adequately investigate and conduct any meaningful adversarial testing process against the state's case. Petition at 12. He alleges this occurred in a number of ways: (1) failure to investigate the source of the cuts on Petitioner's arm; (2) failure to depose all of the officers; (3) failure to investigate the inconsistencies in the testimony of the state's key witnesses; and (3) failure to investigate police misconduct or fabrication of evidence. <u>Id.</u> Respondents contend that the first two issues are unexhausted and procedurally defaulted as they were not included in the Rule 3.850 motion.

In ground one of his amended Rule 3.850 motion, Petitioner alleged a similar claim of ineffective assistance of counsel; however he did not contend that counsel failed to investigate the cut from a broken beer bottle obtained at his father's house nor did he contend that counsel was ineffective for not deposing all of the law enforcement officers.

27

The Court finds Petitioner did not exhaust these claims raised in Ground Five. Because any future attempt to exhaust it would be futile, the claims are procedurally defaulted. As Petitioner is procedurally barred from raising these claims, he must demonstrate cause and prejudice. Petitioner has failed to establish cause and prejudice or that a fundamental miscarriage of justice will result if the Court fails to address the claims on their merits. The Court further finds this is not an extraordinary case as Petitioner has not made a showing of actual innocence rather than mere legal innocence. As such, the Court finds that these claims raised in Ground Five are procedurally defaulted and the fundamental miscarriage of justice exception is inapplicable. Petitioner's procedural default bars this Court's review of these claims raised under Ground Five.

That leaves the remaining portion of Ground Five for the Court's consideration. Petitioner exhausted his state court remedies by raising this ineffective assistance of counsel claim by asserting it in ground one of his amended motion for postconviction relief, and by raising it on appeal from the denial of postconviction relief. Ex. H2. The First DCA affirmed. Ex. H4.

The postconviction court addressed this ground finding:

> First, Defendant alleges counsel was deficient
> for failing to investigate discrepancies in the location

28

of a baseball bat. Defendant claims prejudice because there is a reasonable probability the bat had been tampered with and the crime scene was staged. Defendant further alleges counsel should have retained an expert who would have concluded that the sliding glass door had been shattered from inside the residence.

The victim testified that the robber shattered her sliding glass door with the butt of a shotgun. (Ex. A at 168-70.) Investigators recovered Defendant's Deoxyribonucleic Acid ("DNA") from a shard of glass at the scene. (Ex. B at 99.) After entering her home, the robber took a towel and wrapped it around one of his arms. (Ex. A at 179.) When interviewing Defendant, investigators observed cuts on his arms. (Ex. A at 71-72.) The robber stole Defendant's jewelry and a blue iPod. (Ex. A at 173-76.) Shortly after the robbery, Defendant offered to sell his sister jewelry and a blue iPod. (Ex. B at 26-30, 80-85.) None of the facts support Defendant's theory that an elderly woman shattered her own sliding glass door with a baseball bat, so there is no reasonable probability the outcome of Defendant's trial would have been different had counsel hired an expert to render this conclusory claim. See State v. Oisorio, 657 So. 2d 4, 5 (Fla. 3d DCA 1995) ("The evidence against Oisorio was so overwhelming, and the now-asserted defensive materials so patently insubstantial that no rational jury could do anything but convict him."); see also Maharaj v. State, 778 So. 2d 944, 951 (Fla. 2000) ("Postconviction relief cannot be based on speculation or possibility.").

Second, Defendant alleges counsel was deficient for failing to challenge the admission of a shard of glass containing Defendant's DNA because of discrepancies as to how it was collected.

29

> "Before a physical object connected with the commission of a crime may properly be admitted in evidence there must be a showing that such object is in substantially the same condition as when the crime was committed." Gallego v. United States, 276 F.2d 914, 917 (9th Cir. 1960); accord Robinson v. State, 325 So. 2d 427, 429 (Fla. 1st DCA 1976). "In order to bar the introduction of evidence due to a gap in the chain of custody, the defendant must show that there was a probability of tampering with the evidence, and a mere possibility of tampering is insufficient." Nimmons v. State, 814 So.2d 1153, 1155 (Fla. 5th DCA 2002).
>
> Nothing in the record indicates the blood-stained shard was tampered with after it was discovered. It was found shortly after the break in, and officers took possession of it almost immediately. (Ex. A at 199; Ex. B at 44-61.) Any inconsistencies regarding its discovery would go to its evidentiary weight, not its admissibility. Hildwin v. State, 141 So. 3d 1178, 1187 (Fla. 2014). Counsel brought these inconsistencies to the jury's attention and argued for them to give the shard little weight. (Ex. B at 161-66.) Accordingly, Defendant is not entitled to relief on Ground One.

Ex. F1, Order Denying Defendant's Motion for Postconviction Relief (Order) at 2-3 (footnote omitted).[9] The postconviction court denied relief and the First DCA per curiam affirmed the denial of relief without a written opinion. To the extent that the First DCA decided the claim on the merits, the Court will

---

[9] The Court references the page numbers of this document, Order.

30

address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Petitioner is not entitled to relief on the basis of this claim.

Nevertheless, even if the appellate court's adjudication of the claim is not entitled to deference, Petitioner's ineffectiveness claim is without merit. His ineffectiveness claim is without merit because he has shown neither deficient performance nor resulting prejudice. Accordingly, he is not entitled to federal habeas relief on Ground Five.

Through cross-examination of the victim, defense counsel Patricia Rado established that the perpetrator did not grab a towel until the very end, right before he departed. Ex. B3 at 7. Further, the victim admitted that she never saw the perpetrator bleeding inside of her home and never found blood in her home. Id. at 8. Ms. Rado also impeached the victim's testimony with her deposition, clarifying that the glass shard with blood was found outside on the

patio. Id. at 9-10. In closing argument, Ms. Rado homed in on the discrepancies in the state's witnesses' testimonies. Id. at 154-67. Ms. Rado focused her cross-examination on the discrepancies in testimony concerning the location of the glass shard, how and when the shard was collected, and the "confusion as to what happened after the glass was found." Id. at 163-64. Ms. Rado argued that there could have been contamination as there certainly were problems with collection of evidence and discrepancies in testimony. Id. at 164. With regard to the cuts on Petitioner's arm, Ms. Rado effectively argued there were two different sets of cuts, and the perpetrator was not actively bleeding and there were not pools of blood at the scene nor was the perpetrator wiping up blood. Id. at 164-66.

Finally, to the extent Petitioner concedes procedural default, he argues his procedural default should be excused based on the reasoning of Martinez because he did not have post-conviction counsel. Reply at 6. Apparently, Petitioner contends that the procedural default was caused by the lack of post-conviction counsel, the collateral proceeding was the first opportunity to raise the procedurally defaulted claim, and the procedurally defaulted claim has some merit. See Martinez 566 U.S. at 17.

32

Martinez provides a narrow, equitable, non-constitutional exception to the holding in Coleman.  Thus, Petitioner must demonstrate the claim raised has some merit.  Martinez, 566 U.S. at 14.  Upon review, the underlying ineffectiveness claim at issue lacks merit; therefore, Petitioner has not demonstrated that he can satisfy an exception to the procedural bar. As Petitioner has failed to demonstrate the underlying ineffective assistance of counsel claim is a substantial one, the narrow exception set forth in Martinez, 566 U.S. at 17, is inapplicable and does not excuse the procedural default of this claim. See Clark v. Comm. Ala. Dep't of Corr., 988 F.3d 1326, 1330 (11th Cir. 2021) ("Martinez is of no help because [Petitioner] has not presented a 'substantial claim' that his trial counsel rendered ineffective assistance[.]"), cert. denied, 142 S. Ct. 1134 (2022). Petitioner has failed to establish cause for the procedural default of parts of his claim raised in Ground Five and the Court finds Petitioner's default is not excused.

## F. Ground Six

As Ground Six, Petitioner alleges he received the ineffective assistance of counsel based on counsel's failure to secure an expert to establish contamination and tampering of the crime scene. Petition at 14. His stated concerns are the location of the bat on the table when the victim testified she

33

placed it inside of the door's track, and Alan Cavin's testimony that he found the glass shard with blood (DNA) after the crime scene technician left. Id.

In ground two of his amended postconviction motion, Petitioner alleged a comparable claim of ineffective assistance of counsel, but Petitioner made no mention of the bat. Ex. F1. See Response at 18. The Court finds Petitioner did not exhaust the claim concerning the bat raised in Ground Six. Because any future attempt to exhaust it would be futile, the claim is procedurally defaulted. As Petitioner is procedurally barred from raising this contention, he must demonstrate cause and prejudice. Petitioner has failed to establish cause and prejudice or that a fundamental miscarriage of justice will result if the Court fails to address this claim on its merits. The Court further finds this is not an extraordinary case as Petitioner has not made a showing of actual innocence rather than mere legal innocence. As such, the Court finds that this claim raised in Ground Six is procedurally defaulted and the fundamental miscarriage of justice exception is inapplicable. Petitioner's procedural default bars this Court's review of this particular claim under Ground Six.

To the extent Petitioner concedes procedural default, he argues his procedural default should be excused based on the reasoning of Martinez because he did not have post-conviction counsel. Reply at 6. Martinez provides

34

a narrow, equitable, non-constitutional exception to the holding in <u>Coleman</u>
and Petitioner must demonstrate the claim raised has some merit.  <u>Martinez</u>,
566 U.S. at 14. Here, the underlying ineffectiveness claim at issue lacks merit.
As such, Petitioner has not demonstrated that he can satisfy an exception to
the procedural bar. As Petitioner has failed to demonstrate the underlying
ineffective assistance of counsel claim is a substantial one, the narrow
exception set forth in <u>Martinez</u> is inapplicable and does not excuse the
procedural default of this claim. Petitioner has failed to establish cause for the
procedural default of the part of his claim raised in Ground Six concerning the
bat and the Court finds Petitioner's default is not excused.

As for the remainder of Ground Six, the postconviction court summarily
denied the claim that counsel was ineffective for failing to secure an expert.
Ex. F1, Order. The court held:

> In Ground Two, Defendant alleges counsel was
> ineffective for failing to obtain an expert in crime scene
> investigations. Specifically, Defendant complains
> counsel was deficient because an expert would have
> provided evidence that the crime scene had been
> contaminated. Defendant claims prejudice because
> inculpatory evidence would not have been admitted
> had counsel obtained an expert.
>
> Defendant is not entitled to relief because he has
> failed to allege any facts which would indicate a
> reasonable probability of tampering, and nothing in

35

the record supports his claim. When determining whether or not evidence has been tampered with, this Court must first look to the chain of custody. Armstrong v. State, 73 So. 3d 155, 172 (Fla. 2011) ("Relevant physical evidence is admissible unless there is an indication of probable tampering. This is a test for determining whether the chain of custody is established." (internal quotations and citations omitted)). "[A] sufficient showing of the chain of custody is made where the object has been kept in proper custody since the time it was under possession and control until the time it was produced at trial." Id.

In Defendant's case, there were no gaps in the chain of custody. A friend of the victim found blood on a shard of glass while sweeping. (Ex. A at 199.) the victim called the police and informed them about the discovery. (Ex. A at 199.) An officer who had forgotten his notebook returned to the victim's home. (Ex. B at 44-45.) He called for a detective. (Ex. B at 58.) When the detective arrived, he photographed the shard and swabbed the blood. (Ex. B at 58.) He put the shard in a plastic bag, initialed it, and had the bag placed in the property room. (Ex. B at 58.) He did the same for the swab, but placed it in an envelope instead of a plastic bag. (Ex. B at 60-61.) A DNA analyst from the Florida Department of Law Enforcement tested the swab for blood and recovered a full DNA profile. (Ex. B at 99.) The blood matched Defendant. (Ex. B at 100-01.) At trial, the detective identified both the shard and the swab as those he had placed into evidence. (Ex. B at 60-61.) Because both the shard of glass and the bloody swab were in the possession and control of law enforcement from the moment they were obtained until trial, Defendant has failed to demonstrate either a break in the chain of custody or an indication of tampering. Id.

Ex. F1, Order at 3-5.

The postconviction court recognized, even assuming arguendo that the chain of custody was broken or not established, Petitioner had not adequately demonstrated a reasonable probability of tampering. Id. at 5. In addition, the postconviction court noted, "any inconsistencies regarding the evidence's discovery would go to weight, not admissibility" thereby leaving it up to the jury to determine the strength of the state's case. Id. As such, the court concluded "there is not reasonable probability that the outcome of Defendant's trial would have been different had counsel retained an expert." Id.

The First DCA affirmed. Ex. H4. Thus, to the extent that the First DCA decided the claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Petitioner is not entitled to relief on the basis of this claim.

Nevertheless, even if the appellate court's adjudication of the claim is not entitled to deference, Petitioner's ineffectiveness claim is without merit.

Initially, the Court recognizes there is no general duty to retain expert witnesses in order to perform effectively. Richter, 562 U.S. at 111. Even when assuming arguendo defense counsel was somehow deficient in failing to secure and call an expert in crime scene investigations, it could not have prejudiced Petitioner because there is no reasonable probability that the outcome of his trial would have been different.

Also, defense counsel used other competent means to challenge the state's witnesses' testimony. The record demonstrates there were other ways counsel effectively performed within the wide range of reasonable professional assistance under Strickland. Indeed, through cross-examination defense counsel challenged the state's witnesses' accounts of their stories and raised the matter again during closing argument. As such, the record makes it clear that Ms. Rado drew the jury's attention to the potential weaknesses in the state's offered version of events and the belated discovery and handling of evidence.

To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate both deficient performance and prejudice. The Court is not

convinced that trial counsel performed deficiently under these circumstances. Even assuming arguendo deficient performance by counsel, Petitioner has not shown any resulting prejudice. Petitioner has not shown a reasonable probability exists that the outcome of the case would have been different if counsel had performed differently. For all of the foregoing reasons, Petitioner is not entitled to habeas relief on the claim in Ground Six.

## G. Ground Seven

As Ground Seven, Petitioner alleges he received the ineffective assistance of counsel based on counsel's failure to advise Petitioner regarding jury selection or by misadvising Petitioner concerning jury selection. Petition at 16. Under this ground, Petitioner raises two contentions: (1) counsel told him there was no legal basis to strike Nora Miles just because she had family ties to law enforcement; and (2) counsel never advised him he was entitled to a jury of his peers, meaning closer in age to Petitioner's age at trial: 29 years. Id.

Respondents contend this ground is partially unexhausted as Petitioner abandoned the second sub-claim (jury of his peers) on appeal of the postconviction order. Response at 19-21. He did raise this issue in ground three

of his postconviction motion. Ex. F1, Motion for Postconviction Relief (Motion) at 13-15.[10] He did not, however, pursue the matter on appeal. Ex. H2 at 16-17.

Respondents submit that Petitioner did not properly exhaust this sub-claim in Ground Seven because he failed to invoke one complete round of the state's appellate review process. Response at 20-21. According to Respondents, Petitioner abandoned the claim on appeal when he failed to raise it in his initial brief, and therefore it is procedurally barred from federal habeas review. Id. at 20. In Darity v. Sec'y, Dep't of Corr., 244 F. App'x 982, 984 (11th Cir. 2007), the Eleventh Circuit found a district court erred in determining a petitioner's ineffectiveness claim was procedurally barred because he failed to raise it on appeal of the summary denial of his Rule 3.850 motion. However, the Eleventh Circuit's opinion relied on Webb v. State, 757 So. 2d 608 (Fla. 5th DCA 2000), which the Fifth District Court of Appeal subsequently overturned. See Ward v. State, 19 So. 3d 1060, 1061 (Fla. 5th DCA 2009) (finding that an appellant, who challenged the summary denial of his Rule 3.850 motion, abandoned issues not raised in his appellate brief). See also Maxwell v. State, 169 So. 3d 1264, 1265 n.1 (Fla. 5th DCA 2015) (holding two of the three grounds are deemed abandoned as the defendant failed to raise them in his appellate brief,

---

[10] The Court references the page numbers of this document, Motion.

citing <u>Ward</u>). Here, Petitioner filed a pro se brief on appeal of the postconviction court's summary denial of his postconviction motion, but he did not raise the instant claim in his brief. Ex. H2. Therefore, Petitioner seemingly failed to exhaust the sub-claim in Ground Seven. Because any future attempt to exhaust the claim would be futile, it is procedurally defaulted. Petitioner has demonstrated neither cause and prejudice to excuse his lack of exhaustion nor demonstrated a fundamental miscarriage of justice has occurred. As such, the sub-claim in Ground Seven is due to be denied as procedurally barred.

To the extent that the First DCA decided the claim on the merits, Ex. H4, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Petitioner is not entitled to relief on the basis of this claim.

Relying on the prejudice prong of <u>Strickland</u>, the postconviction court rejected Petitioner's claim that counsel was ineffective for misadvising

41

Petitioner during voir dire, finding Petitioner "failed to demonstrate prejudice because there is no indication that any of the jurors were actually biased." Ex. F1, Order at 6. During voir dire, after Nora Miles stated she has a brother-in-law that works for the Jacksonville Sheriff's Office, the court inquired as to whether that in any way would affect her ability to serve fairly and impartially. Ex. B2 at 41-42. Ms. Miles responded in the negative. Id. at 42. The postconviction court concluded that her familial ties to law enforcement, standing alone, were insufficient to demonstrate prejudice. Ex. F1, Order at 6. Further, the court found that Petitioner's assertion that had counsel exercised her peremptory challenges differently there would have been a different result amounted to nothing more than mere speculation on Petitioner's part. Id.

Here, Petitioner's claim is too speculative to establish prejudice. See Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991) (conclusory allegation lacking factual substantiation will not support an ineffective assistance of counsel claim). Petitioner made no showing that the juror was actually biased or incompetent. See Fennell v. Sec'y, Fla. Dep't of Corr., 582 F. App'x 828, 834 (11th Cir. 2014) (rejecting a jury-selection Strickland claim finding the petitioner did not demonstrate the juror was actually biased against him). "[A] petitioner, in the post-conviction context, has the additional burden of meeting

42

the actual bias requirement that Florida employs." Shellito v. Sec'y, Fla. Dep't of Corr., No. 3:18-v-868-J-39JRK, 2020 WL 4428475, at *12 (M.D. Fla. July 31, 2020) (citation omitted). See Carratelli v. State, 961 So. 2d 312, 323 (Fla. 2007). As such, Petitioner failed to meet his burden. Upon review, the state court correctly applied Strickland. Thus, Petitioner is not entitled to relief on the basis of this claim.

## H. Ground Eight

As Ground Eight, Petitioner alleges trial counsel rendered ineffective assistance by failing to object to a non-expert opinion given by Detective Jessica Maynard concerning whether the cuts on Petitioner's arm were similar to those from breaking a glass door or window and by failing to retain an independent expert to challenge the state's theory. Petition at 18.

Respondents contend this ground is unexhausted as Petitioner abandoned the claim on appeal of the postconviction order. Response at 21-22. He did raise this issue in ground four of his amended postconviction motion. Ex. F1, Amended Motion for Post Conviction Relief (Amended Motion) at 18-20.[11] However, he did not brief the matter on appeal. Ex. H2.

---

[11] The Court references the page numbers of this document, Amended Motion.

43

Respondents argue that Petitioner did not properly exhaust this claim of ineffective assistance of counsel because he failed to invoke one complete round of the state's appellate review process. Response at 21-22. According to Respondents, Petitioner abandoned the claim on appeal when he failed to raise it in his initial brief, and therefore it is procedurally barred from federal habeas review. Id. at 21. Petitioner filed a pro se brief on appeal of the postconviction court's summary denial of his postconviction motion, but he did not raise the instant claim in his brief. Ex. H2. Therefore, Petitioner seemingly failed to exhaust the claim in Ground Eight. Because any future attempt to exhaust the claim would be futile, it is procedurally defaulted. Petitioner has demonstrated neither cause and prejudice to excuse his lack of exhaustion nor demonstrated a fundamental miscarriage of justice has occurred. As such, the claim in Ground Eight is due to be denied as procedurally barred.[12]

To the extent that the First DCA decided the claim on the merits, Ex. H4, the Court will address the claim in accordance with the deferential

---

[12] To the extent Petitioner relies on Martinez contending that his lack of postconviction counsel constitutes cause and prejudice to overcome the procedural bar, Reply at 6, Martinez does not apply where Petitioner raised the procedurally defaulted claim in his postconviction motion but abandoned it on appeal. See Martinez, 566 U.S. at 16 ("The holding in this case does not concern attorney errors in other kinds of proceedings, including appeals from initial-review collateral proceedings[.]").

standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Petitioner is not entitled to relief on the basis of this claim.

The postconviction court rejected Petitioner claim that counsel was ineffective for failure to object. Ex. F1, Order at 6-7. The court explained:

> A lay witness may give opinion on a person's physical appearance as long as the opinion is based upon the witness's observation. Bush v. State, 809 So. 2d 107, 119-20 (Fla. 4th DCA 2002). The State asked detective Maynard if she was "able to view [Defendant's] body to see if he had any cuts that would have been consistent with how the victim described the perpetrator wrapped his right arm." (Ex. B at 71-72.) She replied, "Yes, I did." (Ex. B at 72.) Her response was not opinion testimony, as she stated that she was able to observe Defendant. (Ex. B at 72.) Assuming *arguendo* that her response could be interpreted as opinion testimony, her testimony that Defendant had cuts on his arm that could have been caused by shattered glass was not objectionable because it was the type of testimony a lay person may give regarding their observations. Id.

Ex. F1, Order at 6-7.

45

The record demonstrates the following. The prosecutor inquired of Detective Maynard whether she came into contact with Petitioner on April 20, 2014. Ex. B3 at 71. She responded in the affirmative. Id. The prosecutor asked Detective Maynard if she were "able to view his body to see if he had any cuts that would have been consistent with how the victim described the perpetrator wrapped his right arm?" Id. at 71-72. Again, Detective Maynard responded yes to what she had observed. Id. at 72. Based on this record, Detective Maynard did not give an expert opinion as to the nature and cause of Petitioner's injuries. Thus, counsel was not ineffective for failure to object to the detective's testimony. To the extent this testimony could be perceived to be a comment as to whether the injury could be caused by shattered glass, Detective Maynard's testimony did not require a special skill as her testimony was based upon her observations. As such, Petitioner is not entitled to habeas relief.

The postconviction court also rejected the contention that Petitioner should have secured an expert to refute Detective Maynard's testimony. Ex. F1, Order at 7. The court concluded that even if a hypothetical expert would have testified consistently with Petitioner's theory of the defense, the court concluded, "there is no reasonable probability that the ultimate outcome of Defendant's trial would have been different based upon the evidence of guilt

46

presented by the State." <u>Id.</u> As noted by the postconviction court, there was considerable evidence against Petitioner, including his DNA. <u>Id.</u>

As previously noted, there is no general duty to retain expert witnesses in order to perform effectively. <u>Richter</u>, 562 U.S. at 111. Ms. Rado focused on the victim's testimony that she never saw the perpetrator bleeding inside of her home and never saw or found blood in her home. Ms. Rado also made effective argument concerning the cuts on Petitioner's arm. Ms. Rado's performance was within the broad range of reasonably competent assistance. Also, Petitioner has not met the prejudice prong of <u>Strickland</u>. As such, Petitioner is not entitled to habeas relief on Ground Eight.

## I. Ground Nine

As Ground Nine, Petitioner alleges trial counsel rendered ineffective assistance by failing to object to improper comments by the prosecutor. Petition at 20. Respondents contend this ground is unexhausted as Petitioner abandoned the claim on appeal of the postconviction order. Response at 22-23. He did raise this issue in ground five of his postconviction motion. Ex. F1 at 17. However, he did not brief the matter on appeal. Ex. H2.

Respondents contend that Petitioner did not properly exhaust this claim of ineffective assistance of counsel because he failed to invoke one complete

47

round of the state's appellate review process. Response at 22-23. According to Respondents, Petitioner abandoned the claim on appeal when he failed to raise it in his initial brief, and therefore it is procedurally barred from federal habeas review. Id. Here, Petitioner filed a pro se brief on appeal of the postconviction court's summary denial of his postconviction motion, but he did not raise the instant claim in his brief. Ex. H2. Therefore, Petitioner seemingly failed to exhaust the claim in Ground Nine. Because any future attempt to exhaust the claim would be futile, it is procedurally defaulted. Petitioner has demonstrated neither cause and prejudice to excuse his lack of exhaustion nor demonstrated a fundamental miscarriage of justice has occurred. As such, the claim in Ground Nine is due to be denied as procedurally barred.[13]

To the extent that the First DCA decided the claim on the merits, Ex. H4, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's

---

[13] To the extent Petitioner relies on Martinez contending that his lack of postconviction counsel constitutes cause and prejudice to overcome the procedural bar, Reply at 6, Martinez does not apply where Petitioner raised the procedurally defaulted claim in his postconviction motion but abandoned it on appeal. See Martinez, 566 U.S. at 16.

adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Petitioner is not entitled to relief on the basis of this claim.

The postconviction court rejected Petitioner's claim that counsel was ineffective for failure to object to the State's closing argument. Ex. F1, Order at 7-8. In particular, Petitioner argued his counsel performed deficiently in failing to object to the State's contention that Petitioner sexually assaulted the victim. Id. at 7. The court found that because the State properly argued that Petitioner committed a sexual battery based on the evidence at trial, "counsel was not deficient for failing to object." Id. at 8.

In particular, the victim testified that the perpetrator, armed with a shotgun forced the victim to lie on the floor and place her fingers in her vagina. Id. This evidence supports a conviction for sexual assault with a deadly weapon. In Florida,

> [a] finger is an "object" within the context of the sexual battery statute. Harrison v. State, 360 So. 2d 421 (Fla.1978). Thus, the coerced insertion of a woman's own fingers in her intimate body orifice, against her will and at the command of a person that is

> intimidating her, is prohibited by the sexual battery
> statute.

Kirby v. State, 625 So. 2d 51, 55 (Fla. 3d DCA 1993).

There was no prosecutorial misconduct as the prosecutor's argument was based on a reasonable inference from the evidence presented at trial. The prosecutor's argument constituted a fair and reasonable inference from the evidence considering the comments in context, along with the entirety of the evidence presented at trial. As such, defense counsel was not ineffective for failure to object and Ground Nine is due to be denied.

## J. Ground Ten

As Ground Ten, Petitioner alleges trial counsel rendered ineffective assistance by failing to object to an erroneous jury instruction for attempted sexual battery and move for an instruction for the correct necessarily lesser included offense. Petition at 22. In ground six of his postconviction motion, Petitioner alleged a similar claim of ineffective assistance of counsel. The postconviction summarily denied this ground finding:

> The jury found Defendant guilty of Armed
> Sexual Battery. (Ex. C.) Thus, he was not prejudiced
> by an instruction on attempt. Cf Pepitone v. State, 846
> So. 2d 640, 642 (Fla. 2d DCA 2003) ("When the
> defendant **is improperly convicted** of such lesser
> offense, the conviction must be reversed."). Further,
> Defendant was not prejudiced by counsel's failure to

50

> request an instruction on the lesser-included offense of
> battery because this Court did instruct the jury on
> lesser included offenses but the jury chose [sic]
> convicted him of the greater crime. <u>Sanders v. State</u>,
> 946 So. 2d 953, 959-60 (Fla. 2006) ("[A]ny finding of
> prejudice resulting from defense counsel's failure to
> request an instruction on lesser-included offenses
> necessarily would be based on a faulty premise: that a
> reasonable probability exists that, if given the choice,
> a jury would violate its oath, disregard the law, and
> ignore the trial court's instructions."). Further,
> because the only evidence of battery was the sexual
> battery, there is no reasonable probability the
> ultimate outcome of Defendant's trial would have been
> different had this Court instructed the jury on battery
> as a separate offense. Accordingly, Defendant is not
> entitled to relief on Ground Six.

Ex. F1, Order at 8-9 (footnote omitted). Also, the court included a footnote

explaining that during the charge conference, counsel said she had conferred

with her client concerning the lack of a battery instruction and he agreed that

battery would be inapplicable. <u>Id.</u> at 9 n.4. <u>See</u> Ex. B3 at 135. The First DCA

per curiam affirmed the denial of relief without a written opinion. Ex. H4.

Respondents contend that Petitioner did not properly exhaust this claim

of ineffective assistance of counsel because he failed to present any federal

constitutional argument in support of his claim in his appeal of the

postconviction order. Response at 24. According to Respondents, Petitioner

deprived the state courts of their one full opportunity to resolve any

51

constitutional issues. <u>Id.</u> Upon review, Petitioner filed a pro se brief on appeal of the postconviction court's summary denial of his postconviction motion, and he did raise the instant claim in his brief. Ex. H2 at 17-19. Therefore, Petitioner exhausted the claim in Ground Ten.

Next, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Petitioner is not entitled to relief on the basis of this claim.

Alternatively, Petitioner's ineffectiveness claim is without merit because he has shown neither deficient performance nor resulting prejudice. Accordingly, he is not entitled to federal habeas relief on the claim in Ground Ten.

During the charge conference, the following discussion took place concerning armed sexual battery and attempted armed sexual battery or attempted sexual battery. Ex. B3 at 133. The State noted the decision had been

made to delete battery because the offender never touched or struck the victim. Id. Ms. Rado said she was not going to argue battery. Id. After conferring with Petitioner, Ms. Rado told the court that she had spoken with Petitioner and the defense decided, "based on the theory of the case and the evidence that we put forward, it's not really an applicable lesser included anyway." Id. at 135. Thus, as noted in the ruling of the postconviction court, Petitioner agreed to this strategy and the omission of the lesser included instruction.

The record shows the trial court did not give a battery instruction as a lesser included instruction of armed sexual battery, as agreed upon by the parties. Ex. B3 at 185-88. Defense counsel affirmatively waived the issue before the trial court, after discussing the matter with Petitioner and announcing his agreement. Ms. Rado properly assessed the situation and realized it was in her client's best interest to not request a battery instruction when there was no evidence that the offender touched or struck the victim. The parties properly considered and assessed whether the lesser included offense should be given and decided that it should not be charged to the jury. As such, counsel cannot be deemed to have performed deficiently in this regard.

Not only has Petitioner failed to satisfy the performance prong, but he also failed to satisfy the prejudice prong of Strickland. Petitioner was not

prejudiced as the jury found him guilty of the greatest offense, armed sexual battery. Ex. B4 at 413-14. Apparently, Petitioner is contending that the jury should have been given the opportunity to employ its inherent power to pardon Petitioner by convicting him of the lesser offense of battery even though the jury found Petitioner guilty of armed sexual battery.[14] Petitioner cannot satisfy the prejudice prong of <u>Strickland</u> by claiming the possibility of a jury pardon based on arbitrariness, whimsy, caprice, nullification, and leniency. The Court presumes a jury will act according to law. <u>Strickland</u>, 466 U.S. at 694. The jury determined that the State proved its armed sexual battery case; therefore, Petitioner "has no entitlement to the luck of a lawless decisionmaker[.]" <u>Id.</u> at 695.

Therefore, even assuming deficiency on the part of counsel, Petitioner has suffered no prejudice by this alleged deficiency. There is no reasonable probability that, but for counsel's alleged unprofessional errors, the result of the proceeding would have been different. For it to be different, the Court would have to assume that the jury would "violate its oath, disregard the law,

---

[14] The trial court instructed the jury: "[i]f you return a verdict of guilty, it should be for the highest offense which has been proven beyond a reasonable doubt." Ex. B3 at 194.

and ignore the trial court's instructions." <u>Sanders</u>, 946 So. 2d at 959. As such, Petitioner cannot satisfy the prejudice prong of <u>Strickland</u>.

As Petitioner was convicted of armed sexual battery, he was not prejudiced by counsel's failure to object to the attempted sexual battery instruction. Assuming arguendo deficient performance, Petitioner cannot demonstrate prejudice. As such, he cannot meet the second prong of <u>Strickland</u>. Therefore, he is not entitled to habeas relief on Ground Ten.

### K. Ground Eleven

As Ground Eleven, Petitioner alleges trial counsel rendered ineffective assistance by misadvising Petitioner regarding jury instructions and failing to request necessary lesser included instructions. Petition at 24. He argues that the instructions for burglary, a lesser included offense to armed burglary, and robbery, a lesser included offense to armed robbery, should have been included in the instructions. <u>Id.</u>

Respondents contend that Petitioner did not properly exhaust part of this claim of ineffective assistance of counsel due to his abandonment of the burglary issue. Response at 25. According to Respondents, Petitioner deprived the state courts of their one full opportunity to resolve any constitutional issues by invoking one complete round of the appellate review process. <u>Id.</u> Petitioner

55

filed a pro se brief on appeal of the postconviction court's summary denial of his postconviction motion, and sufficiently raised the instant claim in his brief to support exhaustion of state court remedies as he referred to the court's inclusion of the lesser included offenses of theft for armed robbery and trespass for burglary, but the omission of others. Ex. H2 at 18-19.

Nevertheless, based on the record, Petitioner's contention has no merit. The court instructed the jury on robbery and burglary. Ex. B3 at 174-84. The jury had the option to find Petitioner guilty of simple robbery and burglary. Ex. B1 at 24-26. The jury found Petitioner actually possessed a firearm during the commission of the offenses of robbery and burglary. Id. at 24-25. The jury also found Petitioner committed an assault or battery upon the victim during the commission of the offense of burglary. Id. at 25. The court gave the instructions, but the jury found Petitioner guilty of the greater crimes. As such, Petitioner has not satisfied the prejudice prong of Strickland.

The postconviction court denied the claim raised in ground seven of Petitioner's postconviction motion. Ex. F1, Order at 9. The First DCA affirmed. Ex. H4. The Court finds the state court's determination is consistent with federal precedent. As such, it is entitled to AEDPA deference. It is based on a reasonable determination of the facts and a reasonable application of the law.

The state court's adjudication is not contrary to or an unreasonable application of <u>Strickland</u> or based on an unreasonable determination of the facts. As such, the decision is entitled to deference and Ground Eleven is due to be denied.

## L. Ground Twelve

As Ground Twelve, Petitioner alleges trial counsel rendered ineffective assistance by failing to object to the commission of a double jeopardy violation. Petition at 26. He argues he should not have been convicted of both burglary with a battery and sexual battery as only one battery occurred. <u>Id.</u> In ground eight of his postconviction motion, Petitioner alleged a similar claim of ineffective assistance of counsel. The postconviction summarily denied this ground finding it was without merit citing <u>Young v. State</u>, 762 So. 2d 595, 595 (Fla. 5th DCA 2000); <u>Perez v. State</u>, 138 So. 3d 1098, 1101 (Fla. 1st DCA 2014); and <u>Tambriz-Ramirez v. State</u>, 248 So. 3d 1087 (Fla. 2018). Ex. F1, Order at 9. The First DCA per curiam affirmed the denial of relief without a written opinion. Ex. H4.

Respondents contend that Petitioner did not properly exhaust this claim of ineffective assistance of counsel because he failed to present any federal constitutional argument in support of his claim in his appeal of the postconviction order. Response at 26. According to Respondents, Petitioner

deprived the state courts of their one full opportunity to resolve any constitutional issues. Id. Upon review, Petitioner filed a pro se brief on appeal of the postconviction court's summary denial of his postconviction motion, and he did raise the instant claim in his brief. Ex. H2 at 7-9. Thus, Petitioner exhausted the claim raised in Ground Twelve.

Next, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Petitioner is not entitled to relief on the basis of this claim.

Counsel did not perform deficiently for failing to object to a double jeopardy violation as the offense of burglary includes the element of entering a dwelling, which sexual battery does not, and sexual battery requires sexual contact, which burglary does not. See Rockett v. Sec'y, Dep't of Corr., No. 8:08-cv-1417-T-23EAJ, 2014 WL 3809146, at *26 (M.D. Fla. Aug. 1, 2014) (not reported in F.Supp.3d). Indeed, "burglary with assault or battery is not a lesser

58

included offense of felony battery or sexual battery; and sexual battery is not

a lesser included offense of felony battery or burglary with assault or battery."

Watson v. Buss, No. 4:08cv428/SPM/EMT, 2011 WL 4102776, at *17 (N.D. Fla.

Mar. 15, 2011) (not reported in F.Supp.2d) (footnote omitted), report and

recommendation adopted, 2011 WL 4090681 (N.D. Fla. Sept. 14, 2011). As this

Court related:

> Next, Petitioner alleges that his convictions for both burglary of a dwelling with battery and sexual battery violate the Double Jeopardy Clause of the Fifth Amendment. As one of its three separate protections, the constitutional guarantee against double jeopardy "protects against multiple punishments for the same offense." North Carolina v. Pearce, 395 U.S. 711, 717 (1969).

> "[T]o determine whether a single criminal incident may be cumulatively punished under separate statutory provisions," the Court applies the well-known test from Blockburger v. United States, 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932). Williams v. Singletary, 78 F.3d 1510, 1513 (11th Cir. 1996). The Blockburger test "inquires whether each offense contains an element not contained in the other; if not, they are the 'same offen[s]e' and double jeopardy bars additional punishment and successive prosecution." United States v. Dixon, 509 U.S. 688, 696, 113 S. Ct. 2849, 125 L. Ed.2d 556 (1993). The crime of sexual battery includes an element not included in first degree burglary with a battery: sexual contact.

59

> The Florida Supreme Court used the Blockburger test and arrived "at the conclusion that first degree burglary and sexual battery could be separately and cumulatively punished." Wicker v. State, 462 So. 2d 461, 463 (Fla. 1985). Additionally, the Fifth District has upheld dual convictions for sexual battery and burglary with a battery stemming from the same sexual battery. Young v. State, 762 So.2d 595 (Fla. 5th Dist. Ct. App. 2000). A conviction for both burglary with a battery and sexual battery does not violate the Double Jeopardy Clause and Petitioner is entitled to no relief on Claim 2.

Caldwell v. Att'y Gen., No. 5:08-cv-151-Oc-10GJK, 2011 WL 2938089, at *4 (M.D. Fla. July 19, 2011) (not reported in F.Supp.2d) (footnote omitted), aff'd sub nom. Caldwell v. Att'y Gen., State of Fla., 502 F. App'x 895 (11th Cir. 2012), cert. denied, 569 U.S. 1032 (2013).

Petitioner is not entitled to habeas relief as his counsel was not ineffective for failure to object. Ground Twelve is due to be denied.

## M. Ground Thirteen

As Ground Thirteen, Petitioner alleges trial counsel rendered ineffective assistance by failing to move for DNA testing of all evidence collected and alleged to contain a drop of Petitioner's DNA. Petition at 28. He contends counsel failed to move to have the shard of glass tested, questioning whether the swab came from the shard of glass. Id.

60

Respondents contend that Petitioner did not properly exhaust this claim of ineffective assistance of counsel because he failed to present any federal constitutional argument in support of his claim in his appeal of the postconviction order. Response at 27. According to Respondents, Petitioner deprived the state courts of their one full opportunity to resolve any constitutional issues. Id. Here Petitioner filed a pro se brief on appeal of the postconviction court's summary denial of his postconviction motion, and he did raise the instant claim in his brief. Ex. H2 at 10-12. Therefore, Petitioner exhausted his claim of ineffective assistance of counsel raised in Ground Thirteen.

Next, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications.  In ground nine of the amended postconviction motion, Petitioner alleged a comparable claim of ineffective assistance of counsel. The postconviction summarily denied this ground finding:

> In Ground Nine, Defendant alleges counsel was ineffective for failing to test evidence for DNA. Specifically, Defendant claims counsel was deficient for not having the shard of glass tested for DNA evidence. Defendant claims prejudice because there is a reasonable probability the ultimate outcome of his trial would have been different had counsel had the shard tested.

> Defendant's claim is wholly conclusory because he alleges the outcome of his trial would have been different without providing any underlying facts which, if true, would show that the DNA testing that was done was not reliable or why additional testing would have produced different results. See Wolfgang v. State, 212 So. 3d 501, 504 (Fla. 5th DCA 2017) (citing Jones v. State, 998 So. 2d 573, 584 (Fla. 2008)). Accordingly, Defendant is not entitled to relief on Ground Nine. See Bannister v. United States, No[.] 08-81228-CIV, 2009 WL 3561697, at *26 (S.D. Fla. Oct. 30, 2009).

Ex. F1, Order at 9-10 (footnote omitted). The First DCA per curiam affirmed. Ex. H4.

After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Petitioner is not entitled to relief on the basis of this claim.

Of import, in Bannister v. United States, No. 08-81228-CIV, 2009 WL 3561697, at *26 - *27 (S.D. Fla. Oct. 30, 2009) (not reported in F.Supp.2d), the United States District Court for the Southern District of Florida rejected a comparable claim of ineffective assistance of counsel finding no deficient

performance or prejudice had been established pursuant to <u>Strickland</u> as Petitioner failed to explain how the testing was not reliable or why additional testing would produce a different result. The same is true of this case. Petitioner surmises that if the shard were retested it would produce a different result. This is simply conjecture on Petitioner's part. Emily Haines, the DNA analyst for the Florida Department of Law Enforcement testified the swab from Petitioner matched the swab taken from the piece of glass. Ex. B3 at 100. Further, Ms. Haines attested that "[t]he frequency of the DNA profile I obtained, which is from the swab from the glass, from enumerated individuals is approximately one in 18 quintillion." <u>Id.</u> at 107.

"The likelihood of a different result must be substantial, not just conceivable." <u>Richter</u>, 562 U.S. at 112. Under these circumstances, it is purely speculative that additional DNA testing would have provided favorable results and testimony for Petitioner. <u>See</u> <u>Diaz v. Sec'y, Fla. Dep't of Corr.</u>, No. 20-80394-CV-MIDDLEBROOKS, 2021 WL 3193170, at *6 (S.D. Fla. Apr. 30, 2021) (same), <u>report and recommendation adopted</u>, 2021 WL 3190923 (S.D. Fla. July 28, 2021). Petitioner proposes an insufficient basis for relief under <u>Strickland</u>. Indeed, "[s]uch speculation is plainly insufficient to establish prejudice under <u>Strickland</u>." <u>McGuire v. Sec'y, Dep't of Corr.</u>, No. 8:16-cv-1934-

KKM-UAM, 2023 WL 6196858, *11 (M.D. Fla. Sept. 22, 2023). Petitioner's ineffectiveness claim is without merit because he has shown neither deficient performance nor resulting prejudice. Accordingly, he is not entitled to federal habeas relief on the claim in Ground Thirteen.

### N. Ground Fourteen

In Ground Fourteen, Petitioner raises a claim of cumulative errors on counsel's part, resulting in the denial of a fair trial. Petition at 30. Petitioner raised a comparable claim in ground ten of his postconviction motion. The court summarily denied this ground finding, "[g]round ten is moot, as this Court has already rejected all of his claims of error." Ex. F1, Order at 10. The First DCA affirmed. Ex. H4.

Respondents contend that Petitioner did not properly exhaust the claim in Ground Fourteen because he failed to invoke one complete round of the state's appellate review process. Response at 28-29. According to Respondents, Petitioner abandoned the claim on appeal when he failed to raise it in his initial brief, and therefore it is procedurally barred from federal habeas review. Id. at 28. Here, Petitioner filed a pro se brief on appeal of the postconviction court's summary denial of his postconviction motion, but he did not raise the instant claim in his brief. Ex. H2. Therefore, Petitioner seemingly failed to exhaust the

64

claim in Ground Fourteen. Because any future attempt to exhaust the claim would be futile, it is procedurally defaulted. Petitioner has demonstrated neither cause and prejudice to excuse his lack of exhaustion nor demonstrated a fundamental miscarriage of justice has occurred.[15] As such, the claim in Ground Fourteen is due to be denied as procedurally barred.

To the extent that the First DCA decided the claim on the merits, Ex. H4, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Petitioner is not entitled to relief on the basis of this claim.

Finally and alternatively, none of Petitioner's individual ineffectiveness claims warrant relief; therefore, there is nothing to accumulate. See Morris v.

---

[15] To the extent Petitioner relies on Martinez contending that his lack of postconviction counsel constitutes cause and prejudice to overcome the procedural bar, Reply at 6, Martinez does not apply where Petitioner raised the procedurally defaulted claim in his postconviction motion but abandoned it on appeal. See Martinez, 566 U.S. at 16.

Sec'y, Dep't of Corr., 677 F.3d 1117, 1132 (11th Cir. 2012). Petitioner's trial counsel's alleged errors, neither individually nor cumulatively, deprived him of a fair trial or due process. Considering the record, the Court finds that Petitioner is not entitled to federal habeas relief on Ground Fourteen.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.    The Petition (Doc. 1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

3.    The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3.    If Petitioner appeals the denial of the Petition,[16] the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the

---

[16] This Court should issue a certificate of appealability only if a petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. at 335-36 (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Upon due consideration, this Court will deny a certificate of appealability.

pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

4.    The Clerk of the Court is directed to close this case and terminate any pending motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 13th day of November, 2023.

_____
BRIAN J. DAVIS
United States District Judge

sa 11/6
c:
Christopher Watts
Counsel of Record